UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

FILED

MAR 0 7 2017

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____
                    DEPUTY

|  |  |
|---|---|
| MARY K. VIEGELAHN,<br>Standing Chapter 13 Trustee,<br><br>Appellant,<br><br>v.<br><br>MANUEL PALOMERA LOPEZ, and<br>DOLORES RONQUILLO LOPEZ,<br><br>Appellees. | Case No: 5:15-cv-379-RCL |

## MEMORANDUM OPINION

This case comes before the Court on appeal from the March 10, 2015 Bankruptcy Court's orders granting the debtors' motion to voluntary dismiss their Chapter 13 case, and dismissing as moot the trustee's motion to modify the confirmed plan. The trustee—the appellant here—argues that the Bankruptcy Court erred in permitting the debtors—the appellees—to dismiss their Chapter 13 case because the debtors acted in bad faith. The debtors argue that, under Chapter 13, they had an absolute right to dismiss their case, regardless of any bad faith, and that in any case, they did not act in bad faith. The parties also dispute whether the Bankruptcy Court erred when it ordered the funds in possession of the trustee be returned to the debtors upon dismissal. This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a) which provides that district courts have jurisdiction to hear appeals from final judgments and orders of bankruptcy judges. It finds that the Bankruptcy Court did not err in granting the debtors' motion to dismiss or in dismissing as moot the trustee's motion to modify. The Court does find, however, that the Bankruptcy Court erred in ordering that the funds in possession of the trustee be returned to the debtors upon dismissal. The Court will therefore affirm in part and reverse in part the Bankruptcy Court's orders

1

and will remand for entry of an order allowing the trustee to disburse the funds in its possession to the debtors' creditors.

I.   **BACKGROUND**

On June 29, 2009, the debtors filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Texas as well as a plan of reorganization. Individual debtors may declare bankruptcy under either Chapter 7 or Chapter 13. Chapter 13 is "wholly voluntary" and "allows a debtor to retain his property if he proposes, and gains court confirmation of, a plan to repay his debts over a three- to five-year period." *Harris v. Viegelahn*, 135 S. Ct. 1829, 1835 (2015). It "benefit[s] debtors and creditors alike," allowing debtors to retain their assets and entitling creditors to a "debtor's 'disposable' postpetition income." *Id.* Chapter 7 on the other hand "allows a debtor to make a clean break from his financial past, but at a steep price: prompt liquidation of the debtor's assets," which are immediately transferred to a bankruptcy estate overseen by a trustee who sells the property and distributes the proceeds to creditors. *Id.*

The debtors' Chapter 13 plan proposed a monthly payment of $1,100 for five years, and a 2% dividend to general unsecured creditors. The debtors claimed as exempt their homestead under a provision of Texas law stating that "[a] homestead . . . [is] exempt from seizure for the claims of creditors." Tex. Prop. Code § 41.001. The Bankruptcy Court confirmed the plan on October 9, 2009.

Throughout the debtors' Chapter 13 case, the trustee filed three motions to dismiss after the debtors failed to make payments under the plan and/or because the amount paid was insufficient to pay allowed secured and priority claims in full. In response to the first two motions, the plan was modified. In response to the third motion, filed on June 27, 2014, the debtors filed a

nunc pro tunc motion to sell their homestead, which had been sold on July 11, 2011 for $166,500 via a wrap-around mortgage and balloon payment. Net proceeds to the debtors were estimated at $53,251.00 after the satisfaction of liens. The debtors sought the Bankruptcy Court's authorization to retain the net proceeds to be used for an eye surgery. The trustee objected, asserting that although under Texas law the homestead was exempt, the proceeds from the sale only retained their exempt status for six months, and only to the extent they were reinvested in another homestead within those six months. *See* Tex. Prop. Code. § 41.001(c) ("The homestead claimant's proceeds of a sale of a homestead are not subject to seizure for a creditor's claim for six months after the date of sale."). When not reinvested in another homestead, the proceeds from the sale lost their exempt status and, according to the trustee, should have been turned over to her for the benefit of the debtors' creditors.

The Bankruptcy Court ordered that the net proceeds from the sale of the home, after satisfaction of all claims secured by liens on the property, were to be submitted to the trustee, who would hold the funds in trust until an order was entered modifying the plan. Thus, $42,148.58—the net proceeds after payment of the first lien—were delivered to the trustee. Both parties filed motions to modify the plan. The trustee sought to distribute the proceeds to creditors, and opposed the retention of any portion of the proceeds by the debtors. The debtors proposed using the proceeds, less the amount needed for an eye surgery, to cure the plan payment arrearages and close out the plan. At a hearing on December 4, 2014 the Bankruptcy Court stated that the debtors' creditors would be entitled to the proceeds from the sale, less any expenses for the eye surgery, unless the case was dismissed, at which point the debtors could retain all of the proceeds. Pending a decision on the motions to modify, the debtors filed a motion to voluntarily dismiss their Chapter 13 case on January 7, 2015. The trustee objected, arguing that the home sale proceeds were a

nonexempt asset of the bankruptcy estate, the debtors lost the right to withhold those proceeds from the estate, the voluntary motion to dismiss was filed in bad faith, and cause existed to overcome the presumption that property of the estate reverts to the debtors in the event of dismissal.

The Bankruptcy Court entered an order granting the debtors' voluntary motion to dismiss, finding that "[a]lthough Debtor Dolores Ronquillo Lopez sold her homestead without prior approval of the Court, the Court does not find cause for conversion to Chapter 7 or for an involuntary modification of the Chapter 13 Plan." *See Order Granting Motion to Dismiss*, Bankruptcy Case No. 09-52365, ECF No. 108 (Bankr. W.D. Tex. Mar. 10, 2015). It ordered that the funds in the hands of the trustee—the sale proceeds—be returned to the debtors. *Id.* It also dismissed as moot the trustee's motion to modify the plan.

The trustee appeals both of these orders, arguing that debtors, like those here, do not have an absolute right to dismiss their case when bad faith or abuse of the bankruptcy process is present. The trustee also argues that the Bankruptcy Court should have found that the funds in possession of the trustee—the homestead sale proceeds—should not have been returned to the debtors, and should instead have been disbursed to the debtors' creditors. The debtors argue that they had an absolute right to voluntarily dismiss their Chapter 13 case, and that even if bad faith was an exception to this right, bad faith and/or abuse of the bankruptcy process does not exist here. They also argue that the Bankruptcy Court correctly ordered that the sale proceeds be returned to the debtors upon dismissal. The Court will first address whether the debtors had a right to dismiss their case, then will determine whether the sale proceeds should have been returned to the debtors upon dismissal.

## II. STANDARD OF REVIEW

The Bankruptcy Court's findings of fact are reviewed for clear error and conclusions of law are review de novo. *In re Bass*, 171 F.3d 1016, 1021 (5th Cir. 1999). Mixed questions of law and fact are reviewed de novo. *Id.* The Court notes that the Bankruptcy Court here did not make any detailed findings of fact or law, only concluding that cause did not exist for conversion to Chapter 7 or for an involuntary modification of the plan, and that the funds should be returned to the debtors.

## III. THE BANKRUPTCY COURT DID NOT ERR IN GRANTING THE DEBTORS' MOTION TO DISMISS

### A. Legal Standards

#### 1. *The Right to Dismiss a Chapter 13 Case: Marrama and its Progeny*

Under Chapter 13, "[o]n request of the debtor at any time, if the case has not been converted . . . the court shall dismiss a case under this chapter." 11 U.S.C. § 1307(b). Courts have struggled with whether this right to voluntarily dismiss a Chapter 13 case is absolute, or is subject to any exceptions. Some have found that an implicit exception exists for bad faith, *i.e.*, if the debtor has acted in bad faith, he cannot voluntarily dismiss his Chapter 13 case despite the general voluntariness of Chapter 13. This line of cases extends from the Supreme Court's decision in *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007), which dealt with the interplay between Chapters 7 and 13. Again, Chapters 7 and 13 are avenues through which an insolvent individual may discharge his debts, but they differ in the following ways:

> Chapter 7 authorizes a discharge of prepetition debts following the liquidation of the debtor's assets by a bankruptcy trustee, who then distributes the proceeds to creditors. Chapter 13 authorizes an individual with regular income to obtain a discharge after the successful completion of a payment plan approved by the bankruptcy court. Under Chapter 7 the debtor's nonexempt assets are controlled by the bankruptcy trustee; under Chapter 13 the debtor retains possession of his property.

*Marrama*, 549 U.S. at 367. Proceedings commenced under either Chapter may be converted to the other. Chapter 7 provides "[t]he debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title." 11 U.S.C.A. § 706(a). Chapter 13 provides "The debtor may convert a case under this chapter to a case under chapter 7 of this title at any time," and that "on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause." 11 U.S.C. § 1307(a), (c).

In *Marrama*, the Court considered whether "a bad-faith debtor has an absolute right to convert at least one Chapter 7 proceeding into a Chapter 13 case even though the case will thereafter be dismissed or immediately returned to Chapter 7." *Marrama*, 549 U.S. at 368. The Court held that the right to convert is not absolute. *Id.* at 371. It found that a provision in Chapter 7 prohibits conversion "unless the debtor may be a debtor under [the chapter to which he seeks conversion]." *Id.* (citing 11 U.S.C. § 706(d)). The Court then found that the debtor in *Marrama*, who sought a conversion from Chapter 7 to Chapter 13, did not qualify to be a Chapter 13 debtor. *Id.* at 373. Section 1307(c), which provides that a Chapter 13 proceeding may be dismissed or converted to Chapter 7 "for cause," includes prepetition bad faith conduct of the debtor. *Id.* at 373–74. Section 706(d) therefore prohibited conversion because the debtor had acted in bad faith in his Chapter 7 case, which is grounds for dismissal or conversion (back to Chapter 7) under Section 1307(c).

Subsequent courts interpreted *Marrama* in the context of voluntary dismissal under Section 1307(b), considering whether bad faith provided an exception to the right to dismiss. *See, e.g., In*

6

re *Jacobsen*, 609 F.3d 647, 657–60 (5th Cir. 2010) (collecting and summarizing cases). Several courts found that an implicit bad faith exception to the right to voluntarily dismiss a Chapter 13 case did in fact exist. *See In re Rosson*, 545 F.3d 764, 773–74 (9th Cir. 2008) ("[I]n light of *Marrama*, we hold that the debtor's right of voluntary dismissal under § 1307(b) is not absolute, but is qualified by the authority of a bankruptcy court to deny dismissal on grounds of bad-faith conduct or 'to prevent an abuse of process.'"); *In re Caola*, 422 B.R. 13, 20 (Bankr. D.N.J. 2010); *In re Armstrong*, 408 B.R. 559, 569–72 (Bankr. E.D.N.Y. 2009), *as amended* (July 20, 2009).

The Fifth Circuit, following *Marrama*, denied an absolute right to dismiss a Chapter 13 case and held "that a bankruptcy court has the discretion to grant a pending motion to convert for cause under § 1307(c) where the debtor has acted in bad faith or abused the bankruptcy process and requested dismissal under § 1307(b) in response to the motion to convert." *In re Jacobsen*, 609 F.3d 647, 660 (5th Cir. 2010). It found no analytical distinction between Sections 706(a) and 1307(b) and "reject[ed] a construction of the statute that would afford an abusive debtor an escape hatch." *Id.*

### 2. *Interpreting the Bankruptcy Code: Law v. Siegel*

Following these decisions, the Supreme Court revisited the Bankruptcy Code in *Law v. Siegel*, 134 S. Ct. 1188 (2014). In *Law*, the bankruptcy court allowed a trustee to surcharge a debtor's $75,000 homestead exemption, making the funds available for payment of the trustee's attorney's fees incurred by the trustee in overcoming the debtor's fraudulent misrepresentations. *See Law*, 134 S. Ct. at 1193. The Supreme Court found, however, that the surcharge was unauthorized because it contravened Section 552 which entitled the debtor to the $75,000 exemption, and provides that such exempt property "is not liable for payment of any administrative expense." *Id.* at 1195 (citing 11 U.S.C. § 552(b)(3)(A), (k)). Despite Section 105(a)'s provision

7

that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," 11 U.S.C. § 105(a), the *Law* Court made clear that "[i]t is hornbook law that § 105(a) 'does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code.'" *Law*, 134 S. Ct. at 1194. The Court also addressed the *Marrama* decision, noting that it "certainly did not endorse, even in dictum, the view that equitable considerations permit a bankruptcy court to contravene express provisions of the Code." *Id.* at 1197.

Various courts have interpreted *Law* to mean that they may not graft a bad faith exception into the right to dismiss under Section 1307(b) because the statute states that the debtor may "at any time" request dismissal prior to conversion, and that "the court *shall* dismiss" the case, and therefore that this right is in fact absolute. *See, e.g., In re Fisher*, No. 14-61076, 2015 WL 1263354, at *3–6 (Bankr. W.D. Va. Mar. 19, 2015) (finding that "*Law* change[d] the playing field" and that the plain language of the statute indicates that a debtor's right to dismiss a case which has not been converted is absolute, bad faith concerns do not curb this right, no statutory provision limiting the right to dismiss exists, and application of a bad faith exception contravenes the Bankruptcy Code and exceeds the authority of the bankruptcy court); *see also In re Sinischo*, 561 B.R. 176, 193 (Bankr. D. Colo. 2016) ("The Court finds that § 1307(b) of the Bankruptcy Code requires that the Debtor's request to voluntarily dismiss her case must be granted, despite creditor requests under § 1307(c) that the case be converted to a case under chapter 7 for Debtor's bad faith"); *In re Mills*, 539 B.R. 879, 884 (Bankr. D. Kan. 2015) ("[Section] 1307(b) *mandates* dismissal on the debtor's request by using the words 'at any time' and 'shall.' It only limits the debtor's ability to dismiss cases that have previously been converted to chapter 13 from chapters 7, 11, or 12. This court should not use § 105(a) to rewrite the mandatory provisions of § 1307(b).");

*Ross v. AmeriChoice Fed. Credit Union*, 530 B.R. 277, 287 (E.D. Pa. 2015) (The Court agrees with the line of cases recognizing an absolute right to dismiss under § 1307(b), *Marrama* notwithstanding.").

### B. APPLICATION

The Court finds that the debtors here had an absolute right to voluntarily dismiss their case. Although the Fifth Circuit has not interpreted the decision in *Law*, the Court finds it need not interpret Section 1307(b) under *Law* because this case is distinguishable from *Jacobsen*, the Fifth Circuit precedent relied on to argue that there is no absolute right to dismiss. In *Jacobsen*, the court found that a court may deny a motion to dismiss brought under Section 1307(b) when two circumstances are present: 1) the debtor has acted in bad faith; *and* 2) the motion to dismiss is brought in response to a trustee's motion to convert. *See Jacobsen*, 609 F.3d at 660; *see also id.* at 661 ("[W]e conclude that § 1307(b) is subject to a similar [bad faith] exception, *at least when the debtor's request for dismissal is made in response to a motion to convert under § 1307(c).*" (emphasis added)). The court made clear that it was not determining whether a court can dismiss under Section 1307(b) "when the debtor's request for dismissal precedes the motion to convert." *Id.* at 662 n.15.

The importance of the conversion element was reinforced in *In re Elliot*, where the court found that the *Jacobsen* holding was "a logical extension of the Supreme Court's decision in [*Marrama*] which identified a bad-faith exception in a provision that seemingly created an unqualified right to convert a case from Chapter 7." *In re Elliott*, 506 F. App'x 291, 293 (5th Cir. 2013). The *Elliot* court found that, despite the fact that no party had filed a motion to convert, the case was on all fours with *Jacobsen* because "the bankruptcy court on its own motion entered an

order to show cause why the case should not be dismissed or converted under § 1307(c)" and "Elliott filed his motion to dismiss only after the bankruptcy court threatened conversion." *Id.*

A different court within the Western District of Texas has considered the right to dismiss in very similar circumstances. In *In re Garcia*, 535 B.R. 721 (W.D. Tex. 2015), the debtors filed a voluntary petition for relief under Chapter 13. *Id.* at 722. The debtors subsequently filed a motion seeking leave to sell their 50% interest in a landscaping company and to retain the proceeds. *Id.* The trustee objected, "arguing the proceeds of any such sale were a nonexempt asset of the estate and should be for the benefit of creditors." *Id.* The Bankruptcy Court granted the motion to sell, but ordered that the proceeds be turned over to the trustee as a nonexempt asset. *Id.* at 722–23. The debtors then withdrew their motion to sell and the trustee filed a motion for redemption in the company, "seeking to redeem the [debtors' interest in the company] by effecting the proposed sale . . . under the same terms." *Id.* at 723. The Bankruptcy Court denied the motion for redemption and the debtors subsequently filed a motion to dismiss their Chapter 13 proceedings under Section 1307(b). *Id.* The trustee objected to the motion to dismiss and filed a motion to modify the plan or to convert the case to a Chapter 7 proceeding. *Id.* The Bankruptcy Court granted the motion to dismiss and rendered moot the motion to modify. *Id.*

On appeal, the court acknowledged the "narrow exception" and "limited circumstances" present in *Jacobsen* wherein "the request for dismissal [was] in direct response to a pending motion to convert." *Id.* at 725. In *Garcia*, however, the motion to dismiss was not filed in response to a motion to convert. *Id.* at 726. The court found that "[t]he narrow exception recognized in *In re Jacobsen* is applicable only in very specific circumstances. It allows a bankruptcy court the discretion to grant an already pending motion to convert where, in response thereto, the debtor moves to dismiss. This Court declines to extend the exception where such circumstances are not

present." *Id.* Because "[t]here was no motion to convert pending when Debtors moved to dismiss the proceeding . . . their right to do so under § 1307(b) was absolute and the Bankruptcy Court did not commit reversible error when it granted the Motion to Dismiss." *Id.*

The Court here finds that the Bankruptcy Court did not err when it granted the debtors' motion to dismiss. When the debtors moved to dismiss their Chapter 13 case, there was no pending motion to convert or threat of conversion. *Jacobsen* therefore does not apply and the debtors had an absolute right to dismiss their case, regardless of any alleged bad faith. Because there was no error in granting the motion to dismiss, there was also no error in denying as moot the trustee's motion to modify the plan. The trustee argues that her motion to modify, which sought approval to distribute the home sale proceeds to creditors, should have been granted prior to any grant of dismissal to the debtors of their case. The trustee does not argue, however, that her motion to modify was or should be read as a motion to convert, due to bad faith, under Section 1307(c). She merely advocates that the *Jacobsen* holding should extend to include those situations where a motion to dismiss brought under Section 1307(b), but not in response to a Section 1307(c) motion to convert.

Moreover, the Court finds that it cannot read the trustee's motion to modify as a motion to convert. The motion to modify only sought approval to disburse the proceeds from the homestead sale to creditors. It did not ask, in the alternative, for conversion to Chapter 7. Section 1307(c) only allows conversion to Chapter 7 "for cause" and lists various circumstances constituting "cause." 11 U.S.C. § 1307(c). The trustee's motion to modify argues that the proceeds from the sale lost their exempt status when not reinvested after six months, and that "there remains only 1 month to complete the plan which is an insufficient period of time for Debtor to retain the asset and to satisfy the best interest of the creditors test," but it does not identify whether, why, or how

cause exists under Section 1307(c). Nor does the trustee's objection to the debtors' motion to dismiss raise a conversion argument, arguing only that *Jacobsen* applies in this situation and that the debtors' right to dismiss is blocked by bad faith. Finally, upon a review of the transcripts in this case, the Court has found no reference to a motion to convert.

Therefore, the Court finds that the debtors' motion to dismiss was not filed in response to a motion to convert, explicit or otherwise, and therefore that their right to dismiss was absolute. The court will now turn to whether the Bankruptcy Court erred in ordering the homestead sale proceeds be returned to the debtors upon dismissal.

## IV.   THE BANKRUPTCY COURT ERRED IN ORDERING THE HOMESTEAD SALE PROCEEDS BE RETURNED TO THE DEBTORS UPON DISMISSAL

The trustee also argues that the bankruptcy court erred when it ordered the homestead sale proceeds be returned to the debtors upon dismissal. The Bankruptcy Court ordered that "[t]he funds in the hands of the Trustee shall be returned to Debtor Dolores Ronquillo Lopez after payment of the Trustee's commission." It did not discuss the reasoning for this decision. The trustee argues that because the sale proceeds were not reinvested in another homestead within six months, they belong to the debtors' creditors. In addition, she argues that cause existed to order that the sale proceeds not be returned to the debtors. The debtors argue that the "property of the estate" is property of the *estate*, not of creditors, and that creditors have no vested right in estate property until it is distributed to them. They also refute the trustee's claims that cause existed to order that the sale proceeds not be returned to the debtors.

Section 349 provides that "Unless the court, for cause, orders otherwise, a dismissal of a case . . . revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title." 11 U.S.C. § 349(b)(3). The Court first finds that, under Fifth Circuit precedent, the sale proceeds did not revest in the debtors

because the debtors are not the "entity in which such property was vested immediately before the commencement of the case." When a debtor files for bankruptcy, "an estate comprising all legal and equitable interests in property (including potentially exempt property) of the debtor as of that date" is created. *In re Zibman*, 268 F.3d 298, 302 (5th Cir. 2001). Debtors may however, claim property as exempt from the bankruptcy estate either under state or federal law. 11 U.S.C. § 522(b). Texas state law allows debtors to claim as exempt their homestead. *See* Tex. Prop. Code § 41.001(a). If a debtor sells his home, however, this exemption only lasts as long as the sale proceeds are reinvested in another homestead within six months of the sale. *See* Tex. Prop. Code § 41.001(c). This is known is the "Texas Proceeds Rule."

In *Frost v. Viegelahn*, the Fifth Circuit considered whether proceeds from the sale of a homestead exempted at the time of the petition, but sold post-petition, that had not been reinvested within six months retained their exempt status or reverted to the estate. *See In re Frost*, 744 F.3d 384 (5th Cir. 2014). The court first examined the "snapshot rule," which "holds that all exemptions are determined at the time the bankruptcy petition is filed, and that they do not change due to subsequent events." *Id.* at 386. It then found that, although the character of the asset as a homestead was "an essential element of the exemption [that] must continue in effect even during the pendency of the bankruptcy, . . . [o]nce [the debtor] sold his homestead, the essential character of the homestead changed from 'homestead' to 'proceeds,' placing it under section 41.001(c)'s six month exemption." *Id.* at 387. Thus, when the debtor did not reinvest the proceeds from the sale, they were removed from the protection of the law, no longer remained exempt, and reverted to the bankruptcy estate. *Id.*

The debtors here sold their home on July 5, 2011. At that point, the essential character of the homestead changed from "homestead" to "proceeds." *See id.* It is undisputed that the debtors

did not reinvest the proceeds in another homestead within six months. At that point—January 5, 2012—the proceeds were no longer exempt from the bankruptcy estate. *Id.* Because Section 349(b) states that upon dismissal property of the estate revests "in the entity in which such property was vested *immediately before the commencement of the case*," 11 U.S.C. § 349(b)(3), it is inapplicable to the sale proceeds, which did not exist at the commencement of the case. *Cf.* H.R. Rep. 95-595, at 338 (1977) ("The basic purpose of the subsection is to undo the bankruptcy case, as far as practicable, and to restore all property rights to *the position in which they were found at the commencement of the case*." (emphasis added)). The sale proceeds—essentially changed in character from the homestead—were never vested in the debtors prior to commencement of their Chapter 13 case. Once the six months expired, the debtors "lost [their] right to withhold the sale proceeds from the estate." *Frost*, 744 F.2d at 389. Therefore, on January 5, 2012, the sale proceeds reverted to the bankruptcy estate. *See In re Zibman*, 268 F.3d 298, 305 (5th Cir. 2001) ("When the [debtors] failed to reinvest the proceeds in another Texas homestead within the statutory time period, those proceeds lost their exemption, freeing the Trustee to reach the proceeds as part of the bankruptcy estate."). Because Section 349 says nothing regarding in whom sale proceeds arising post-petition are to be vested, they were not vested in anyone for purposes of post-dismissal distribution under this section. *See In re Darden*, 474 B.R. 1, 9 (Bankr. D. Mass. 2012) ("The Debtor's cause of action for sanctions stemmed from GMAC's post-petition conduct and, therefore, did not exist before the commencement of the case. It was not then vested in anyone. . . . [D]ismissal of the Debtor's case does not, by itself, give her a claim to the GMAC Settlement proceeds.").

In addition, leaving aside the conclusion that Section 349 is inapplicable and that the sale proceeds did not revest in the debtors upon dismissal due to their post-confirmation origins, the

Court finds that "cause" existed to "order[] otherwise," *i.e.*, to order that the sale proceeds did not revest in the debtors upon dismissal. "Cause" is not defined in the Bankruptcy Code. Courts have found that it may exist, however, not only when a debtor has acted in bad faith, but also when it would be inequitable to creditors to return property to debtors upon dismissal. *See In re Darden*, 474 B.R. at 12–13; *see also In re Hamilton*, 493 B.R. 31, 45 (Bankr. M.D. Tenn. 2013) ("Creditors may have statutory or equitable arguments for a share of the undistributed pie."); *In re Hufford*, 460 B.R. 172, 178 (Bankr. N.D. Ohio 2011) ("Having, thus, received the benefits of the Bankruptcy Code for an extended period of time, it can be expected that payments made by the Debtors while their bankruptcy case was pending should be allocated to their creditors in accordance with the intention of their Chapter 13 plan."); *In re Torres*, No. 99-02609, 2000 WL 1515170, at *3 (Bankr. D. Idaho Oct. 10, 2000) (finding that the interests of the creditors were at risk and cause existed to dismiss the case but pay the undistributed funds to creditors where no "manipulative intent" existed, but the "[d]ebtors received protection through the Bankruptcy Code for some ten months while their creditors received nothing").[1]

As explained above, the sale proceeds lost their exempt status and became part of the estate on January 5, 2012, long before the debtors sought to dismiss their case. The only reason that the Bankruptcy Court and the trustee became aware of the sale and the failure to reinvest in another homestead was because the debtors filed a nunc pro tunc motion to sell when the title company involved in the refinancing required a court order, three years after the actual sale. But, the debtors had a duty to disclose the existence of such proceeds, acquired after confirmation of the plan, particularly because the Chapter 13 plan in this case provided that upon confirmation, property of the estate remained as property of the estate and did not vest in the debtors. *See In re Flugence*,

---

[1] The Court notes that the debtors have not argued that "cause" only exists in situations where bad faith is present. They have only argued that they have not acted in bad faith.

738 F.3d 126, 129–30 (5th Cir. 2013) (finding that a debtor "had an affirmative duty to disclose her personal-injury claim" and rejecting any uncertainty regarding "whether a debtor must disclose assets post-confirmation" where "the plan explicitly stated that the estate's assets would not revest in the debtor until discharge"); *In re Castillo*, 508 B.R. 1, 7–8 (Bankr. W.D. Tex. 2014) ("The law in this Circuit has consistently held that a debtor has a continuing obligation to disclose post-petition claims, causes of action, and assets."). The debtors here did not disclose the newly acquired proceeds as they were required to do.

Furthermore, the debtors sold their house without notice and or court approval. The debtors argue that they were under no obligation to give such notice or seek court approval. This assertion is belied by the Federal Rules of Bankruptcy Procedure and the local rules in this District. Rule 7004 requires notice to be given of a proposed sale of property, and instructs that "[a] motion for authority to sell property free and clear of liens or other interests shall be made . . . and shall be served on the parties who have liens or other interests in the property to be sold." FED. R. BANKR. PROC. 7004(a), (c). Local Rule 6004(c) states that in "Chapter 13 cases, a motion for proposed . . . sale of property shall indicate consent or lack of consent of the trustee and of any affected secured creditor." W.D. TEX. BANKR. R. 6004(c). This indicates that a debtor must file a motion in order to sell property, and that he or she must ask the trustee whether or not the trustee consents to such a sale.

Given these circumstances—the fact that the debtors did not seek approval to sell their home and did not give notice of the sale, and that they then failed in their obligation to disclose the existence of the proceeds from the sale, and that the proceeds became property of the estate after the debtors did not reinvest such proceeds in another homestead within six months—the Court finds that cause existed to not return the sale proceeds to the debtors upon dismissal. After the

debtors failed to reinvest the sale proceeds within six months, the proceeds became non-exempt property of the estate. The proceeds, changed in character from the homestead, did not exist before the commencement of the case and were not vested in the debtors for purposes of post-dismissal distribution. In addition, cause existed to order that the proceeds not be vested in the debtors. It would be inequitable to the creditors to allow the debtors, who sold their home without notice or approval and then effectively concealed the fact that they were in possession of the sale proceeds, which belonged to the estate, for three years, to retain such proceeds. Those proceeds lost their exempt status and belonged to the bankruptcy estate, and should have been distributed to the debtors' creditors. Thus, even though the debtors had an absolute right to voluntarily dismiss their Chapter 13 case, they did not have an absolute right to retain the sale proceeds. *Cf. In re Darden*, 474 B.R. at 8 (finding that "although the Debtor has the right to dismiss her case under § 1307(b), she [did] not have an absolute right to the [settlement proceeds arising post-petition] upon her doing so" because cause existed to order otherwise). The Court finds that the Bankruptcy Court erred in ordering that the sale proceeds be returned to the debtors upon dismissal and will reverse the Bankruptcy Court's order directing the sale proceeds be returned to the debtors.

The Court also notes, however, that Chapter 13 trustees may not administer property of the estate to creditors as they please. Section 1326 directs that "[e]xcept as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors *under the plan*." 11 U.S.C. § 1326(c) (emphasis added). Unlike in Chapter 7, in Chapter 13 cases the trustee is bound by the terms of the confirmed plan:

> Under section 704(1) of the Bankruptcy Code, a Chapter 7 trustee may "collect and reduce to money the property of the estate for which such trustee serves . . . ." These powers are absent from Chapter 13. A Chapter 13 trustee is neither empowered nor authorized to collect or liquidate property of the estate or property of the debtor. Similarly, Chapter 13 does not contain any provision, like that in section 726(a) for Chapter 7 trustees, which either permits or directs the distribution of "property of the estate" or which specifies how

"property of the estate shall be distributed . . . ." In fact, the only provision in Chapter 13 which authorizes or permits a Chapter 13 trustee to handle property of any nature is found in section 1302(b)(3), which requires the trustee to distribute the plan payments received from a debtor. Consequently, other than relaying the funds directly entrusted to the trustee by the debtor pursuant to a confirmed plan, a Chapter 13 trustee, unlike a Chapter 7 trustee, has no statutory obligation, right, duty or power to sell, use, lease, collect, liquidate or distribute any property, whether that property is denominated "property of the estate" or "property of the debtor."

*In re Ezzell*, 438 B.R. 108, 121 (Bankr. S.D. Tex. 2010) (quoting *EconoLube N' Tune, Inc. v. Frausto (In re Frausto)*, 259 B.R. 201, 210 (Bankr. N.D. Ala. 2000)); *see also In re Leslie*, 318 B.R. 108, 112 (Bankr. N.D. Tex. 2004) ("The trustee collects plan payments, preserves the funds as property of the bankruptcy estate, and disburses the funds to creditors as directed by the debtor's plan or court order.").

Therefore, although the sale proceeds reverted to the bankruptcy estate on January 5, 2012, the trustee is incorrect in stating that she did not need to seek approval from the court or modification of the plan before distributing the proceeds to creditors. Therefore, the Court will remand this case to the Bankruptcy Court to enter an order allowing the trustee to disburse such funds to the creditors in accordance with this Court's order and the Chapter 13 plan in this case.

## V. CONCLUSION

In sum, the Court finds that because the debtors' motion to dismiss was not filed in response to a motion to convert by the trustee, *Jacobsen* does not apply and the debtors had an absolute right to voluntarily dismiss their Chapter 13 case. The Bankruptcy Court did not err in granting the debtors' motion to dismiss. The Court will affirm this part of the Bankruptcy Court's Order.

However, because the debtors sold their home without notice or approval, then effectively concealed this fact for three years, and because the homestead sale proceeds lost their exempt status and became property of the bankruptcy estate after the debtors failed to reinvest the proceeds within six months, the Court finds that cause existed to order that the proceeds not be returned to

the debtors, but instead be distributed to the debtors' creditors. Therefore, the Bankruptcy Court erred in ordering that the sale proceeds be returned to the debtors upon dismissal. The Court will reverse this part of the Bankruptcy Court's order and will remand for entry of an order allowing the trustee to distribute the proceeds to the debtors' creditors.

A separate order accompanies this Memorandum Opinion.

Date: March 7, 2017

Royce C. Lamberth
United States District Judge